# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DEWEY CARDWELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:20-cv-00758-SGC |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION[1]

The plaintiff, Dewey Cardwell, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Cardwell timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.     Procedural History

Cardwell completed the seventh grade and previously was employed as a heavy equipment operator and a general laborer. (Tr. at 26, 43-44). In his application for DIB, Cardwell alleged he became disabled on April 17, 2017, as a

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8).

result of a variety of physical and mental impairments. (*Id.* at 165, 197). After his claim was denied, Cardwell requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 89-90). Following a hearing, the ALJ denied Cardwell's claim. (*Id.* at 20-28). Cardwell was 51 years old when the ALJ issued his decision. (*Id.* at 26, 28). After the Appeals Council denied review of the ALJ's decision (*id.* at 3-5), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Cardwell commenced this action. (Doc. 1).

## II.     Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. §

404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Cardwell would meet the SSA's insured status requirements through March 31, 2021, and had not engaged in substantial gainful activity since April 17, 2017, the alleged onset date of his disability. (Tr. at 22).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Cardwell has the following severe impairments: degenerative disc disease, degenerative joint disease, morbid obesity, and asthma. (Tr. at 22). The ALJ determined Cardwell's prostate cancer was a non-severe impairment. (*Id.*).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of

impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Cardwell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 23).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Cardwell has the RFC to perform light work with certain exertional, postural, and environmental limitations. (Tr. at 24). At the fourth step, the ALJ determined Cardwell is not able to perform his past relevant work. (*Id.* at 26).

If the claimant is unable to perform his past relevant work, the Commissioner

must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Cardwell's age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy, such as those of booth cashier and bench assembler, that Cardwell can perform. (Tr. at 27). Therefore, the ALJ concluded Cardwell is not disabled. (*Id.* at 27-28).

### III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer*

*v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV.   Discussion**

On appeal, Cardwell challenges (1) the determination his prostate cancer is a non-severe impairment, (2) the evaluation of his testimony regarding his pain and other subjective symptoms, (3) the assessment of his RFC, and (4) the failure to apply Grid Rule 201.10. (Doc. 17 at 11-14).

### A.     Non-Severe Impairment

Step two of the sequential evaluation undertaken by an ALJ serves as a "filter" or "screen" to weed out claims involving *no* severe impairment or combination of impairments. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Stratton v. Bowen*, 827 F.2d 1447, 1452, 1452 n.9 (11th Cir. 1987). "[T]he finding of *any* severe impairment . . . is enough to satisfy the requirement of step two." *Jamison*, 814 F.2d at 588 (emphasis added); *see also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Based on our precedent and the regulations . . . it is apparent that there is no need for an ALJ to identify every severe impairment at step two."). However, if a case advances beyond step two, an ALJ must consider all impairments, severe or not, at later steps in the sequential evaluation. *Tuggerson-Brown*, 572 F. App'x at 951; *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)). Accordingly, where an ALJ commits error at step two, the error is harmless, provided the ALJ considers all impairments, severe or not, at later steps of the sequential evaluation. *See, e.g., Tuggerson-Brown*, 572 F. App'x at 951-52 (holding claimant could not demonstrate error where record demonstrated ALJ considered severe and non-severe impairments after step two of sequential evaluation).

Any error the ALJ committed by failing to identify Cardwell's prostate cancer

as a severe impairment at step two is harmless because the ALJ considered this impairment at later steps of the sequential evaluation. The ALJ stated he evaluated whether Cardwell had an "impairment or combination of impairments" that meets or equals a Listing and considered "all symptoms" in determining Cardwell's RFC. (Tr. at 23-24). "Under [Eleventh Circuit] precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 952 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)).

## B.  Credibility Determination

A claimant may establish disability through testimony of pain or other subjective symptoms. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). To do so, he must satisfy the three-part "pain standard" by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain or other subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Id.*; *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021); *see also* 20 C.F.R. § 404.1529 (containing substantially similar language); SSR 16-3p (same).

An ALJ may discredit a claimant's testimony regarding his subjective

symptoms provided he or she clearly articulates explicit and adequate reasons for doing so. *Brown*, 921 F.2d at 1236; *Whitmore*, 855 F. App'x at 643. In evaluating a claimant's testimony regarding the intensity, persistence, and limiting effects of his symptoms, an ALJ considers all available evidence. *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021); 20 C.F.R. § 404.1529(c); SSR 16-3p.

Cardwell testified he is unable to work because of fatigue and pain, primarily in his back but also in his shoulders, legs, and knees. (Tr. at 49-55, 60; *see also id.* at 215-22, 231-38). Absent pain medication, Cardwell's pain usually rates eight or nine on a 10-point pain scale, but with medication the pain rates four on that scale. (*Id.* at 49-50). Cardwell can sit for approximately 30 minutes before he has to stand to alleviate his pain, and he can stand for between five and 10 minutes before he has to sit. (*Id.* at 51-52). He would have to change positions from standing to sitting every 10 to 20 minutes to make it through a day. (*Id.* at 52). He can reach overhead or out and in front only occasionally. (*Id.* at 54-55).

The ALJ determined that while Cardwell's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, Cardwell's testimony regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. (*Id.* at 25). The ALJ articulated multiple reasons for discrediting Cardwell's

9

testimony, including that Cardwell's testimony regarding disabling fatigue and pain was not consistent with (1) imaging studies, (2) Cardwell's reports to treatment providers, or (3) physical examinations performed by those providers. (*Id.*)

Together, these were appropriate grounds for discrediting Cardwell's subjective symptoms testimony. *See* 20 C.F.R. § 404.1529; SSR 16-3p; *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (holding ALJ properly discredited claimant's subjective symptoms testimony where that testimony was inconsistent with mostly normal findings by claimant's treating providers, claimant's reports to those providers, and conservative nature of recommended treatment). Moreover, the evidence discussed below demonstrates each reason is supported by substantial evidence.

Imaging performed in April 2017 showed no more than moderate degenerative changes in the thoracic and lumbar regions of Cardwell's spine. (Tr. at 331, 340). While Cardwell reported to a family medicine physician in late January 2018 that a recent bone scan showed severe arthritis in his low back, hips, and knees, that scan, performed in early January 2018, did not characterize any degenerative changes as severe and noted only "mild increased uptake" in the shoulders, knees, and feet and "minimal increased uptake" in the low lumbar spine. (*Id.* at 500, 515).[2]

---

[2] An earlier bone scan performed in October 2017 found only "[m]ild degenerative uptake" in Cardwell's shoulders and right knee. (Tr. at 527).

Cardwell did complain of back, knee, and joint pain to treatment providers (*id.* at 308, 315, 346, 364, 425, 432, 495), but he also denied experiencing pain in his back, joints, or extremities on multiple occasions (*id.* at 386, 396, 467, 487, 509, 513, 519, 523, 530, 557). Moreover, as noted by the ALJ, Cardwell rarely, if ever, complained of shoulder pain. Cardwell reported in April 2017 and December 2017 that prescription medication alleviated his back and knee pain, and he went so far as to report in March 2018 that with the aid of one of those medications his degenerative disc disease was stable. (*Id.* 315, 438, 440, 483).[3] Similarly, while Cardwell did report difficulty sleeping and fatigue (*id.* at 352-53, 358, 365, 438-39, 444-45, 501-

---

> A bone scan is a diagnostic procedure used to evaluate abnormalities involving bones and joints. In preparation for a bone scan, a radioactive substance is injected intravenously into the patient. The substance passes through the body and eventually enters the bones. A camera then scans the body. Radiation from the substance is detected and produces an image. Regions that appear brighter on the image are called areas of increased uptake and indicate a relatively higher concentration of the radioactive substance, which may mean an abnormal condition.

*Hendrickson v. Colvin*, 2014 WL 6982640, at *7 n.5 (M.D. Pa. Dec. 10, 2014) (internal quotation marks omitted).

[3] The record reflects Cardwell's complaints of pain were never treated with anything more than oral and injectable medications, including pain relievers and steroids, and recommendations that Cardwell modify his diet and lose weight. (Tr. at 309-10, 316-17, 345, 366, 435, 496). Although not explicitly noted by the ALJ, the conservative nature of this treatment undercuts Cardwell's allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c)(3)(iv) and (v); SSR 16-3p; *Draughon v. Comm'r, Soc. Sec. Admin.*, 706 F. App'x 517, 520 (11th Cir. 2017) (holding conservative nature of claimant's treatment for back and neck pain supported ALJ's decision to discredit claimant's testimony regarding his pain); *see also Doig v. Colvin*, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014) ("The meaning of 'conservative treatment' is well known; it includes any mode of treatment which is short of surgery. Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e., not surgery.").

02, 415-19, 492, 495, 506), he also denied fatigue, including in the latest treatment records made available to the ALJ (*id.* at 315, 323, 326, 379, 466, 477, 484, 486, 537, 541, 547). Finally, many physical examinations of Cardwell's musculoskeletal system performed during the relevant period either were unremarkable or demonstrated largely normal findings, even on occasions Cardwell did complain of pain. (*Id.* at 308, 316, 365, 386, 396, 422, 496, 514, 520, 524).

Cardwell asserts there is evidence that "strongly supports" his allegations of disabling subjective symptoms. (Doc. 17 at 12). However, as stated, the relevant question is not whether evidence supports Cardwell's allegations but whether substantial evidence supports the AJL's determination. *See Moore*, 405 F.3d at 1213 (discussing "narrowly circumscribed" nature of appellate review); *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) ("[W]e review the ALJ's decision for substantial evidence, but neither make credibility determinations of our own nor re-weigh the evidence."). "[C]redibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Here, the AJL clearly articulated explicit and adequate reasons for discrediting Cardwell's testimony regarding his subjective symptoms, and those reasons are supported by substantial evidence.

## C. RFC Determination

"A claimant's RFC is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 764 (11th Cir. 2014) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)). As stated, the ALJ determined Cardwell has the RFC to perform light work with certain exertional, postural, and environmental limitations. (Tr. at 24). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Cardwell argues he does not have the ability to perform light work as defined by the Code of Federal Regulations because he is incapable of "a good deal of walking" and cannot stand for more than 20 minutes without having to sit or sit for more than 20 minutes without having to stand. (Doc. 17 at 13). Light work does not necessarily require "a good deal of walking" or remaining in a single position for an extended period. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 603 (11th Cir. 2017) (emphasizing that the requirement of a "good deal of walking or standing" is expressed in the disjunctive and holding ALJ did not err in determining claimant had the RFC to perform light work with certain exertional, postural, and

13

environmental limitations because even if she could not sit or stand for prolonged periods she was capable of a "good deal of walking"); *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 819 (11th Cir. 2015) (noting light work does not necessarily involve remaining in single position for extended period). The ALJ included Cardwell's need to change positions from standing to sitting every 10 to 20 minutes throughout the day as a limitation on his ability to perform light work, and contrary to Cardwell's assertion, the vocational expert did testify the jobs of booth cashier and bench assembler would accommodate that sit/stand limitation. (Tr. at 24, 63-64).[4] Accordingly, the error claimed by Cardwell is unfounded, and the court otherwise concludes the ALJ's RFC determination is supported by substantial evidence.

### D. Grid Rule 201.10

Cardwell asserts the ALJ should have applied Grid Rule 201.10. (Doc. 17 at 13). The "Grids," also known as the Medical-Vocational Guidelines, are found at 20 C.F.R. Part 404, Subpart P, App. 2. An ALJ may use them to determine at the fifth step whether other work exists in substantial numbers in the national economy that a claimant is capable of performing. *Phillips*, 357 F.3d at 1239.

---

[4] A vocational expert is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). An ALJ may use a vocational expert to determine whether there are jobs existing in significant numbers in the national economy that a claimant can perform. *See Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996) (articulating circumstances under which an ALJ typically uses a vocational expert); *Wilson*, 284 F.3d at (same).

> The [G]rids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Id.* at 1240. Grid Rule 201.10 directs a finding of disability for a claimant who meets certain age, education, and previous work experience requirements and is limited to sedentary work. 20 C.F.R. Part 404, Subpart P, App. 2, § 201.10. The ALJ determined Cardwell has the RFC to perform light work with certain exertional, postural, and environmental limitations. (Tr. at 24). As discussed above, the ALJ did not err in evaluating Cardwell's RFC. Therefore, Grid Rule 201.10 does not apply to Cardwell.

## V.   Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 18th day of March, 2022.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE